IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALAN D. MEEKINS,
    *Pro se* Petitioner,

v.                                                                 Civil No. 3:19cv501 (DJN)

LAKEVIEW LOAN SERVICING, LLC,
*et al.*,
    Respondents.

**MEMORANDUM OPINION**

This matter comes before the Court on Respondent RoundPoint Mortgage Servicing Corporation's ("RoundPoint") Motion for Sanctions Under Civ. R. 11 (ECF No. 24) and Petition for Attorneys' Fees and Costs (ECF No. 39), Respondents Lakeview Loan Servicing, LLC ("Lakeview") and LoanCare, LLC's ("LoanCare") Motion for Sanctions (ECF No. 36) and the Court's Show Cause Order (ECF No. 33). The Court's Show Cause Order directed Petitioner Alan Meekins ("Petitioner") to show cause as to why the Court should not impose sanctions on him for violating Federal Rule of Civil Procedure 11. For the reasons set forth below, the Court hereby GRANTS Respondents' Motions. The Court will issue sanctions against Petitioner in the total amount of $9,000.00.

    **I.**    **BACKGROUND**

This dispute arises out of a mortgage obtained by Petitioner.[1] In June 2017, Petitioner obtained a loan in the amount of $359,900.00 from Embrace Home Loans, Inc. (Amended

---

[1]     The Court takes these facts from Lakeview and LoanCare's Amended Counterclaim and provides them for background purposes only.

Counterclaim for Declaratory Judgment and Injunctive Relief ("Am. Counterclaim") (ECF No. 17) ¶ 10.) In October 2017, the servicing of the loan was transferred to Lakeview as servicer and LoanCare as subservicer. (*Id.* at ¶ 12.) At some point, Petitioner apparently defaulted on the loan, and Loancare sent him notices regarding the default. (*Id.* at ¶ 16.) In March 2018, Petitioner sent Lakeview a document titled "Tender of Payment Offering," asserting that the United States Government had an obligation to pay $431,700 to Lakeview on Petitioner's behalf. (ECF No. 17-3.) On February 12, 2019, Petitioner sent a document to Respondents, titled "Show of Cause Proof of Claim Demand" that contained a litany of difficult to comprehend legal and factual assertions. (ECF No. 10-3). The document stated that Respondents "will have agreed to and consented through 'tacit acquiescence' to ALL the facts in relation to the above referenced alleged Commercial/Civil/Cause." (*Id.*) It further provided that Respondents will have consented to arbitration through "tacit acquiescence" should they not respond within ten days. (*Id.*) Then, on February 25, 2019, Petitioner sent a "Notice of Default" that stated, "you are now a party to the contract that you have received and you have not complied to the terms of the contract." (ECF No. 17-4.) The notice further detailed that failure to respond within three days would result in "default and we will proceed to get a judgment against you through arbitration." (ECF No. 17-4.)

On May 18, 2019, Sitcomm Arbitration Association ("SAA") purported to enter a "Notice of Arbitration Hearing," setting a hearing for June 4, 2019. (ECF No. 17-8.) On May 23, 2019, Lakeview sent a cease and desist letter to Petitioner. (ECF No. 17-6.) On June 20, 2019, arbitrator Sandra Goulette in Laurel, Mississppi, awarded Petitioner $1,079,700.00 from Respondents. (("Award") (ECF No. 1-1) at 17.) Thereafter, on July 10, 2019, Petitioner filed his Motion to Confirm, along with a copy of the Award. (ECF No. 1.)

Respondents RoundPoint, Lakeview and LoanCare (collectively, "Respondents") filed oppositions to Petitioner's Motion to Confirm. (ECF Nos. 10, 11.) Lakeview and LoanCare also filed a Counterclaim and Amended Counterclaim seeking a declaratory judgment and injunctive relief. (ECF Nos. 12, 17.) On August 9, 2019, RoundPoint sent Petitioner a Rule 11(c)(2) safe harbor letter that included a Motion for Sanctions and Memorandum in Support. ("Safe Harbor Letter" (ECF No. 24-1)). The Safe Harbor Letter explained the legal and factual deficiencies in Petitioner's Motion to Confirm and explained how the Motion to Confirm could subject Petitioner to sanctions by the Court. (*Id.*) Roundpoint suggested that Petitioner withdraw his Motion to Confirm within 21 days. (*Id.*). Petitioner did not withdraw his Motion to Confirm. Instead, on August 27, 2019, Petitioner filed a Motion to Supplement the Record and Bar All Current and Future Oppositions, wherein he reiterated the positions taken in his Motion to Confirm. (ECF No. 15.) Then, on October 8, 2019, RoundPoint filed its Motion for Sanctions that it had previously served on Petitioner. (ECF No. 24.)

On December 30, 2019, the Court entered an Order, accompanied by a Memorandum Opinion ("Mem. Op." (ECF No. 32)), denying Petitioner's Motion to Confirm and dismissing the Counterclaim. The Court found that Petitioner's Motion to Confirm lacked any merit, as the record contained no evidence that the parties had agreed to arbitrate any claims between them. (Mem. Op. at 5.) The Court further vacated the Award on both statutory and common law grounds. The Court took RoundPoint's Motion for Sanctions under advisement and ordered Petitioner to show cause as to why his conduct did not violate Rule 11. Specifically, the Court directed Petitioner to "address the legal basis for his argument that Respondents agreed to arbitration, including any legal support for his argument that 'tacit acquiescence' can form a contract." (Mem. Op. at 14.)

Petitioner responded with his own Motion to Show Cause ("Pet.'s Resp." (ECF No. 34)), which the Court construed as Petitioner's response to the Show Cause Order. (ECF No. 35). In his response, Petitioner makes claims regarding the underlying mortgage loan and his attempt to create a "tax event," while citing inapposite statutes and cases. (Pet.'s Resp. at 2-5.) Petitioner referenced sections 54 and 69 of The Restatement (Second) of Contracts, but he offered no facts that would support the application of those sections to create a binding agreement to arbitrate between the parties. Thereafter, Lakeview and LoanCare jointly filed a Motion for Sanctions, asking for an award of reasonable attorneys' fees in the amount of $40,979.00. (ECF No. 36.) RoundPoint also filed its petition for attorneys' fees, requesting an award of $9,256.76 in attorneys' fees and costs. (ECF No. 39.) For the following reasons, the Court finds an award of sanctions appropriate.

## II. ANALYSIS

Rule 11 of the Federal Rules of Civil Procedure sets forth the requirements imposed on individuals filing documents in a federal court, the available sanctions for failing to meet those requirements and the procedural mechanisms for imposing those sanctions. By its terms, Rule 11 applies to both attorneys and *pro se* litigants. By presenting a motion or pleading to the Court, an attorney or unrepresented party certifies that, after a reasonable investigation under the circumstances:

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

3. the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    4. the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(2). Rule 11(c) allows a court, after notice and reasonable opportunity to respond, to impose sanctions on any party that has violated 11(b). *Id.* at (c)(1). A court may impose a sanction of:

> nonmonetary directives; an order to pay a penalty into court; or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation.

*Id.* at (c)(4). Accordingly, the Court will analyze two questions: (1) whether sanctionable conduct has occurred and, if so, (2) the appropriate sanction to issue.

    a.    **Petitioner Violated Rule 11.**

The Fourth Circuit has stated that courts should use an objective standard to evaluate documents potentially violating Rule 11(b). *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). An asserted position violates Rule 11(b) if it has "absolutely no chance of success under the existing precedent." *Id*. The rule does not serve to stifle creativity; rather, it serves to prevent the filing of frivolous claims with no legal or factual support. *Id.* Where the law could colorably support a claim, a Rule 11(b) violation may occur if there exists no factual support for the asserted claims. *Abbott v. Suntrust Mortg., Inc.*, 2009 WL 971267, at *4 (E.D. Va. Apr. 8, 2009) (citing *Edmonds v. Gilmore*, 988 F. Supp. 948, 956-57 (E.D. Va. 1997)). "Litigants proceeding *pro se* are liable for sanctions under Fed. R. Civ. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support." *Id.* In evaluating a filing using an objective standard, "courts should avoid hindsight and resolve all doubts in favor of the signor." *Edmonds*, 988 F. Supp. at 956-57.

Under this objective standard, the Court finds Petitioner's Motion to Confirm frivolous. The Court previously determined that Petitioner's suit lacked merit. (Mem. Op. at 13

("Undoubtedly, Petitioner has pursued unmeritorious litigation.").) Petitioner bases his claim on the assertion that he sent a document to Respondents, titled "Show of Cause Proof of Claim Demand" (ECF No. 10-3) that contained an agreement to arbitrate. The document consisted of difficult to comprehend legal and factual assertions, along with the claim that Respondents will have consented to arbitration through "tacit acquiescence" should they not respond within ten days. Somehow, according to Petitioner, this document gave rise to a purported arbitration award of over a million dollars.

The argument that this document constituted a binding contract contradicts basic contract law. As the Court explained in its Memorandum Opinion denying the Motion to Confirm, a contract requires mutual assent. That is, to form an enforceable contract in Virginia, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981). "Mutual assent by the parties to the terms of a contract is crucial to the contract's validity." *Wells v. Weston*, 229 Va. 72, 78 (1985). "Mutual assent is determined exclusively from those expressions of the parties' intentions which are *communicated* between them." *Moorman v. Blackstock Inc.*, 276 Va. 64, 75 (2008) (emphasis in original) (internal quotations omitted).

Petitioner bases his argument for mutual assent on the fact that Respondents did not respond to his "Show of Cause Proof of Claim Demand," thereby agreeing to the terms therein. (ECF No. 34 at 5.) "A party's silence, however, is insufficient to show its intention to be bound by the terms of a contract." *Phillips v. Mazyck*, 273 Va. 630, 638 (2007). The law clearly states that Petitioner cannot rely on Respondents' lack of response to claim that they agreed to arbitrate. The Court previously determined that "nothing in the record demonstrates a scintilla of mutual assent" (Mem. Op. at 5.), and Petitioner has not since bolstered the record with any

6

evidence of mutual assent. Accordingly, Petitioner's claims lack any evidentiary support, in violation of Rule 11(b)(3).

After the Court ordered Petitioner to set forth the legal support for his argument that "tacit acquiescence" could form a contract, Petitioner responded with a reference to section 69 of the Restatement (Second) of Contracts. (ECF No. 34 at 5.) That section allows for silence to operate as acceptance of a contract only in limited circumstances. Silence can constitute acceptance of an offer and its terms only where the offeree: "(1) accepts the benefits of the offer; (2) has a reasonable opportunity to reject the offer; and (3) understands that the offer is made with the expectation of compensation." *Craddock v. LeClair Ryan*, 2016 WL 1464562, at *6-7 (E.D. Va. Apr. 12, 2016) (citing Restatement (Second) of Contracts § 69(1)(a)). Yet, the comments (which Plaintiff attached to his response to the Show Cause Order) note that "acceptance by silence is exceptional" and that the "mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." Restatement (Second) of Contracts § 69 (comment (a)). And yet, Plaintiff offers no facts to support the application of this exceptional rule. Indeed, Petitioner offers no facts to support any of the elements of the acceptance-by-silence rule. Petitioner does not (1) mention any benefits of the offer accepted by Respondents, (2) show that Respondents had a reasonable opportunity to reject the offer, or (3) demonstrate that Respondents understood any aspect of the offer — including the compensation expected by Petitioner. Given the incomprehensible nature of the document submitted by Petitioner, the Court cannot impute an understanding of its terms on Respondents or any obligation to respond to the document.

Moreover, Petitioner does not cite any caselaw that would support application of the acceptance-by-silence rule here. Instead, the facts here underscore the need to sparingly apply

the acceptance-by-silence rule in exceptional circumstances and only with all three requirements met. Otherwise, the Court would bless this type of contract-by-ambush, wherein a party could receive a nonsensical document and, shortly thereafter, find itself subject to an exorbitant arbitration award that has no basis in fact or law. Thus, Petitioner cannot present a nonfrivolous argument for reversing existing contract law. In sum, any objectively reasonable investigation of the law and facts surrounding this case would have revealed that Petitioner's claim had "absolutely no chance of success under the existing precedent." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (noting the standard for a Rule 11 violation). Therefore, Petitioner's Motion to Confirm violates Rule 11(b)(2).

Finally, *pro se* litigants deserve leniency in the construction of their pleadings. *See Edmonds*, 988 F. Supp. at 957 (*pro se* status should be considered in deciding whether to issue sanctions). However, no amount of permissible leniency can excuse the baseless Motion to Confirm filed by Petitioner. Moreover, Petitioner failed to withdraw his frivolous Motion even after RoundPoint sent him the Safe Harbor Letter warning him of his violation of Rule 11. The Safe Harbor Letter clearly explained why Petitioner's Motion to Confirm lacked merit and violated Rule 11. Instead of taking the opportunity to withdraw the Motion, Petitioner continued to file pleadings advancing this baseless theory that Respondents had agreed to a contract that could support a million-dollar arbitration award. Accordingly, the Court finds that Petitioner has violated Rule 11(b) in filing the Motion to Confirm and, therefore, sanctions are warranted.

    b.   **The Court Will Sanction Petitioner in the Amount of $9,000.00.**

With Petitioner clearly having violated Rule 11, the Court must next determine the appropriate sanction. In determining the proper sanction, the Court keeps in mind that "the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the

opposing party for its costs in defending a frivolous suit." *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990). To that end, "a district court is required to choose the least severe sanction to accomplish the purpose of Rule 11." *Id.* at 523. In deciding upon the appropriateness of a monetary sanction, the Court should consider "(1) the reasonableness of the opposing party's attorneys' fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." *Id.* The Court will examine each factor in turn.

Here, the Court finds Respondents' attorneys' fees reasonable. RoundPoint claims to have incurred $9,265.76, while Lakeview and LoanCare claim to have incurred $40,979.00.[2] Both have submitted detailed billing records to support their requests. The Court has reviewed the records supporting the requests, and does not find the requests unreasonable. Moreover, the Court explicitly gave Petitioner the opportunity to contest the reasonableness of Respondents' fees (ECF No. 35), but he failed to do so. Although the Court finds Respondents' fees reasonable, the other factors counsel against awarding the full amount of fees. *See In re Kunstler*, 914 F.2d at 523 ("Thus, a monetary sanction should never be based solely on the amount of attorney's fees claimed by the injured party, even where a court determines that the amount of the sanction should equal the fees claimed by the injured party.").

With respect to the minimum to deter factor, Rule 11 states that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Fourth Circuit has instructed district courts to impose the *minimum* sanction to deter such conduct, such that "the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer." *In re Kunstler*, 914 F.2d at

---

[2] Lakeview and LoanCare incurred substantially more fees in this action than RoundPoint, because they also filed a counterclaim and moved for an injunction.

524. As discussed more fully below, Petitioner continued to press this frivolous litigation after RoundPoint warned him in the Safe Harbor Letter that his conduct would subject him to sanctions, thereby demonstrating that he is not easily deterred. By remaining undeterred in the face of a credible warning of sanctions, Petitioner raised the minimum sanction necessary to deter him to something substantially greater than a *de minimis* sanction. The Court believes that a $9,000.00 sanction will sufficiently deter Petitioner and those similarly situated to him from filing similar frivolous motions to confirm based on sham arbitration awards. A lesser sanction may not serve to deter these types of filings, especially for would-be filers weighing the sanction against the possibility of obtaining a judgment in excess of a million dollars.

Third, the Court will consider Petitioner's ability to pay. The Court must "refrain from imposing a monetary award so great that it will bankrupt the offending parties . . . ." *In re Kunstler*, 914 F.2d at 524. However, courts treat the inability to pay an otherwise appropriate sanction as "reasonably akin to an affirmative defense," and "the burden is upon the part[y] being sanctioned to come forward with evidence of [its] financial status." *Id.* Despite the Court giving Petitioner an opportunity to contest the reasonableness of Respondents' attorneys' fees as a sanction (ECF No. 35), Petitioner did not raise his inability to pay those fees as a defense. Although Petitioner made no effort to meet his burden of coming forward with evidence that he cannot afford to pay Respondents' attorneys' fees, the Court will consider Petitioner's ability to pay based on the limited information that it has available to it. The record indicates that Petitioner has defaulted on his mortgage loan, thereby suggesting, without proving, a possible inability to keep up with mortgage payments. *See Abbott*, 2009 WL 971267, at *5 (awarding $1,000 sanction without formal showing of financial status, because previous foreclosure suggested sanctioned party had limited ability to pay). On the other hand, and equally as

possible, Petitioner's conduct before and during this litigation could support an inference that he simply refused to pay his mortgage. For example, Petitioner sent Lakeview a "Tender of Payment Offering" that claimed that the United States Government had an obligation to satisfy the remainder of his mortgage balance. (ECF No. 17-3.) However, because the record on this issue has not been fully developed at this point, the Court will assume that limited financial resources resulted in the mortgage default. But, Petitioner's failure to raise this point minimizes its impact on the analysis. Therefore, based on the record before it, the Court finds that a $9,000.00 sanction should not exceed Plaintiff's ability to pay.

Finally, the Court will consider other factors related to the severity of the Rule 11 violation. The Court considers Petitioner's violations severe. Petitioner's violation of Rule 11 manifested itself as an attempt to use the Court to order Respondents to pay him over a million dollars — with no basis for such a judgment. The Court does not take lightly such an abuse of the system and will protect its jurisdiction from such abuse. *See Morning Star Baptist Church v. James City Cty. Police*, 480 F. Supp. 2d 853, 860 (E.D. Va. 2007) (factoring in "the Court's Article III duty to protect its jurisdiction from abuse" when fashioning an appropriate remedy).

However, the Court also fashions its sanction bearing in mind that Petitioner did not act alone in this fraudulent scheme. The Court expresses great skepticism regarding the validity of SAA. Other courts have expressed similar doubts. *See, e.g., Brown v. Ally Financial, Inc.*, 2019 WL 6718672, at *3 n.1 (S.D. Miss. Dec. 10, 2019) (noting that the SAA "purported arbitration award, hearing, and arbitrator are parts of a larger fraudulent enterprise"). It appears that SAA markets to consumers that the consumer can pay money to SAA in return for a judicially enforceable arbitration award. The consumer then uses this award to try to obtain money from a company — either through negotiation or a judgment. However, based on what the Court has

11

reviewed from this case and others involving SAA awards, what the consumer actually receives in exchange for its payment falls woefully short of a judicially enforceable arbitration award. Rather, as another court characterized it, the consumer receives a document that amounts to a "bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law." *U.S. Bank Nat'l Ass'n v. Nichols*, 2019 WL 4276995, at *2 (N.D. Okla. Sept. 10, 2019). As this Court previously indicated, it "has little trouble in determining that the Award has no legal validity and could have only been the product of undue means." (Mem. Op. at 7.) Although the Court factors SAA's role into the determination of the severity of the violation, Petitioner knowingly utilized this "too good to be true" scheme to abuse the judicial process and attempt to obtain money from Respondents. Any promises that SAA may have made to Petitioner do not absolve him from liability for perpetuating the fraudulent scheme. Petitioner still had an obligation under Rule 11 to conduct a reasonable investigation of the facts and law before filing his Motion to Confirm. He clearly failed to do so and, therefore, committed sanctionable conduct.

      Moreover, Petitioner chose to continue this litigation after receiving the Safe Harbor Letter, thereby exacerbating his wasting of party and judicial resources. *See Moody v. Arc of Howard Cty, Inc.*, 474 F. App'x 947, 950 (4th Cir. 2012) (affirming sanctions where plaintiff's counsel, "despite adequate warning of the possibility of sanctions, repeatedly pursued frivolous claims in violation of Rule 11"). In its Safe Harbor Letter, RoundPoint explained the fraudulent nature of the Award, notified him of the possibility that the Court would sanction him, and gave him the opportunity to withdraw his Motion to Confirm. Rather than withdrawing, Petitioner doubled-down on his attempts to enforce the Award. By continuing to attempt to enforce the Award after being made aware of its patent invalidity, Petitioner waived any benefit of the doubt

that his status in relation to SAA may have afforded him. From that point forward, Petitioner evinced a deliberate disregard for contract and arbitration enforcement law from which a motion to confirm an arbitration award must draw its support. Likewise, by failing to heed RoudPoint's warning that his suit had no merit and his conduct could subject him to sanctions by the Court, Petitioner demonstrated a disregard for the judicial process, thereby increasing the severity of his violation.

On balance, an assessment of a modest amount of attorneys' fees under Rule 11 constitutes an appropriate sanction to help deter the filing of future frivolous pleadings. Considering all of the applicable factors, the Court finds it appropriate to impose on Petitioner a sanction requiring him to pay to Respondents the total sum of $9,000.00 — $3,000.00 each to RoundPoint, Lakeview and LoanCare — as part of the fees and expense incurred by Respondents as a result of Petitioner's violation of Rule 11.

### III.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS RoundPoint's Motion for Sanctions (ECF No. 24) and Motion for Attorney Fees (ECF No. 39), and the Court hereby GRANTS Lakeview and LoanCare's Motion for Sanctions (ECF No. 36). Petitioner will be required to pay a monetary sanction in the total amount of $9,000.00 to Respondents.

Having construed Petitioner's Motion to Show Cause as his response to the Court's Show Cause Order (ECF No. 34), the Court hereby DENIES that Motion.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and send a copy of this Memorandum Opinion to *pro se* Petitioner at his address of record.

**NOTICE TO PETITIONER**

**To the extent that Petitioner believes that he has grounds to appeal this decision, Petitioner must file written notice of appeal with the Clerk of the Court within thirty (30) days of the entry of the Order. Failure to file a timely appeal may result in the loss of the right to appeal.**

                                                                /s/
                                           David J. Novak
                                           United States District Judge

Richmond, Virginia
Dated: April 21, 2020